1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Jorge Antonio Ramirez,                    No. CV-23-00114-TUC-JGZ (BGM)

10                  Petitioner,                 **REPORT AND RECOMMENDATION**

11   v.

12   Ryan Thornell, et al.,

13                  Respondents.

14

15       Before the Court is Petitioner Jorge  Ramirez's Petition for Writ of Habeas Corpus

16   by a Person in State Custody Under 28 U.S.C. § 2254.  (Doc. 1.)  Under Local Rules of

17   Civil Procedure 3.7, 72.1, and 72.2, this matter was referred to Magistrate Judge Bruce

18   G. Macdonald  for  a  Report  and  Recommendation.  (Doc. 3.)  The  Magistrate  Judge

19   recommends that the District Court deny the petition and dismiss this case.

20                              **BACKGROUND[1]**

21       In April 2017, a Cochise County Detective was investigating a series of burglaries

22   committed in the areas of Hereford and Palominas, Arizona, including the theft of a farm

23   tractor that occurred in 2016.  *State v. Ramirez*, No. 2 CA-CR 2018-0356, 2019 WL

24   6608757, at *1 (Ariz. Ct. App. Dec. 5, 2019).  The tractor was stolen from a couple who

25

26   [1] The Court adopts the facts as recited by the Arizona Court of Appeals in two of its
27   opinions.  Because the facts are taken from the state appellate court's decisions, they are
     afforded a presumption of correctness that may be rebutted only by clear and convincing
28   evidence. *See* 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007).
     Ramirez fails to challenge these facts.

1  purchased it in 2006 for approximately $25,550.  *Id*. ¶ 3.  During the investigation, the

2  detective interviewed a young female who admitted to stealing the tractor with her

3  boyfriend, Matthew Mullins.  *Id*.  Mullins testified at trial that he was contacted by a local

4  man named John, who asked Mullins to steal a tractor with a bucket on the front in

5  exchange for a combination of drugs and money.  *Id.*  Mullins knew where he could find

6  such a tractor.  *Id.*

7  According to Mullins, when he took the tractor, it was painted blue and in good

8  condition.  *Id*. ¶ 4.  After using a "pick key" for the ignition, Mullins and his girlfriend stole

9  the tractor and drove it ten to fifteen miles to John's house the same night.  *Id*.  Mullins

10  testified that John gave him $300 and an ounce of methamphetamine for the tractor.  *Id*.

11  Mullins denied painting the tractor.  *Id*.

12  The detective interviewed a number of individuals to determine the location of the

13  tractor during the course of his investigation.  *Id*. ¶ 5.  Through these interviews, he received

14  information that the tractor was at Jorge Ramirez's residence.  *Id*.  After securing a search

15  warrant, officers located the tractor behind a shed in Ramirez's backyard.  *Id*.  The tractor's

16  serial number matched that of the tractor stolen in 2016.  *Id*.

17  Before the tractor was stolen, it had a keyed ignition and a blue paint job with white

18  wheel rims.  *Id*. ¶ 6.  When police found the tractor, it had been painted green, although its

19  underbody and area under the hood were still blue.  *Id*.  The tractor's rims had been painted

20  yellow and there was a toggle switch where the keyed ignition would have been.  *Id*.  The

21  headlights, as well as the manufacturer and dealer plates and decals, including the plate

22  bearing its serial number, were also painted green.  *Id*.

23  Ramirez was interviewed by the detective after police found the tractor on his

24  property.  *Id*. ¶ 7.  Although Ramirez knew John and that John had a reputation for dealing

25  in stolen property,[2] he denied knowing that the tractor was stolen and instead claimed that

26  he bought the tractor from John.  *Id*.  Ramirez said that he paid $1,500 for the tractor along

27  with trading a riding lawnmower.  *Id.*  Ramirez stated that he did not receive a title for the

28

---

[2] In fact, Ramirez consistently referred to John as "Con John," John's nickname.

1    tractor but that he did receive a bill of sale from John. *Id.* Police officers failed to find a

2    bill of sale after searching Ramirez's home, and neither side produced one at trial. *Id.*

3    Ramirez admitted that he installed a toggle switch in place of the keyed ignition because

4    the key did not work. *Id.* Although he believed that the key did not work because someone

5    may have tried to steal the tractor, Ramirez informed the detective that he never made any

6    effort to determine whether the tractor was actually stolen. *Id.*

7        At trial, John's testimony contradicted the testimony of Mullins and his girlfriend

8    and the statements that Ramirez had made to the detective. 2019 WL 6608757, at *2. John

9    denied that he told Mullins to steal the tractor, testified that the tractor had already been

10   painted green when Mullins brought it to him, and stated that Mullins and his girlfriend

11   told him the tractor was from the girlfriend's brother-in-law. *Id.* ¶ 8. John also testified

12   that Mullins first brought him the tractor one morning wanting to sell it, but that he told

13   Mullins that he did not have the amount of money to buy it. *Id.* According to John, Mullins

14   asked him to take the tractor to Ramirez to see if he would be interested in buying it. *Id.*

15   John testified that Mullins and his girlfriend were asking between $3,000 and $4,000 for

16   the tractor. *Id.*

17       John had known Ramirez for ten years and lived a block away from him. *Id.* ¶ 9.

18   John testified that he brought the tractor to Ramirez the same day that Mullins delivered it

19   to him. *Id.* According to John, the tractor was in decent condition and had no mechanical

20   issues. *Id.* Although Mullins and his girlfriend were seeking $3,000 to $4,000 for the

21   tractor, John said that Ramirez had only given him $500 to give to the pair and said that

22   they were going to work out the rest. *Id.*

23       After the prosecution rested its case, Ramirez moved for a judgment of acquittal,

24   arguing that there was insufficient evidence to prove that he either knew or should have

25   known that the tractor was stolen. *Id.* ¶ 10. The court denied the motion, ruling that there

26   was substantial evidence to allow the issue to go to the jury. *Id.* The jury subsequently

27   found Ramirez guilty of theft of a means of transportation, and the court sentenced him to

28   a term of 11.25 years' imprisonment. *Id.* ¶ 1 at *1.

1    In April 2017, long before he was convicted in the tractor case, law enforcement

2  officers discovered illegal drugs and drug paraphernalia in Ramirez's residence during the

3  execution of two search warrants.  *State v. Ramirez*, No. 2 CA-CR 2018-0355, 2020 WL

4  104331, at *1 (Ariz. Ct. App. Jan. 8, 2020).  The first warrant authorized officers to search

5  the premises for evidence related to a stolen tractor.  *Id*. at ¶ 2.  However, while searching

6  Ramirez's house, officers saw methamphetamine and drug paraphernalia in plain view on

7  his kitchen table.  *Id*.  This lead officers to obtain a second search warrant allowing them

8  to search for illegal drugs and drug paraphernalia.  *Id.*  A jury trial ensued, with the jury

9  finding Ramirez guilty of multiple drug-related offenses.  *Id.* ¶ 3.  For his drug convictions,

10  Ramirez was sentenced to concurrent terms of imprisonment, the longest of which was

11  15.75 years.  *Id*.

12                                   **PROCEDURAL HISTORY**

13          Tractor Conviction (CR 2017-00343) and Direct Appeal

14    On October 24, 2018, Ramirez was convicted of theft of a means of transportation,

15  a class 3 felony.  (Docs. 1-1 at 81; 10-1 at 33.)  He was sentenced to 11.25 years in prison.

16  (Doc. 1-1 at 81.)  Ramirez filed a direct appeal, in which he argued that the trial court erred

17  when it denied his motion for a judgment of acquittal and that the jury's verdict was not

18  supported by the evidence.  (*Id*.)  On December 5, 2019, the Arizona Court of Appeals

19  affirmed Ramirez's conviction and sentence in a memorandum decision.  *See Ramirez*,

20  2019 WL 6608757, at *3.

21          Drug Conviction (CR 2017-00384) and Direct Appeal

22    On  November  13,  2018,  Ramirez  was  convicted  of  possession  of  drug

23  paraphernalia, a class 6 felony, possession of methamphetamine for sale, a class 2 felony,

24  and possession of marijuana, a class 6 felony.  (Docs. 1-1 at 81; 10-1 at 101-02.)  He was

25  sentenced to concurrent prison sentences, with the longest term being 15.75 years.  (Doc.

26  1-1 at 81.)  Ramirez's concurrent sentences were to run consecutive to the 11.25-year

27  sentence on his tractor conviction.  (Doc. 10-1 at 43.)  Ramirez filed a direct appeal, in

28  which he argued that the warrants authorizing searches of his residence were not supported

1    by probable cause and were improperly executed, and, therefore, the trial court erred when

2    it denied his motion to suppress. (*Id*.)  On January 8, 2020, the Arizona Court of Appeals

3    affirmed Ramirez's convictions and sentences in a memorandum decision.  *See Ramirez*,

4    2020 WL 104331, at *3.

5            Rule 32 Petition for Post-Conviction Relief

6            On March 4, 2021, Ramirez filed a Petition for Post-Conviction Relief ("PCR

7    Petition") under Arizona Rule of Criminal Procedure 32.  (Doc. 10-2 at 85-101.)  His PCR

8    Petition was based on claims that his trial attorney provided ineffective assistance of

9    counsel during both his cases and that the prosecutor engaged in misconduct during his

10   tractor trial by introducing perjured testimony.  (*Id*. at 90-100.)  To show ineffective

11   assistance, Ramirez argued that his attorney (i) wrongly urged him to reject a plea offer

12   and take both cases to trial; (ii) was unable to competently represent him due to an alleged

13   alcohol problem; and (iii) failed to impeach a key witness during his tractor trial, which

14   resulted in Ramirez losing credibility with the jury.  (*Id*. at 90-96.)  Ramirez also argued

15   that the prosecution elicited false testimony and deliberately left the jury with the false

16   impression that one of the witnesses testified without the benefit of a favorable plea

17   agreement.  (*Id*. at 96-100.)  Ramirez requested that the court vacate his convictions and

18   reinstate the original plea offer from his drug case.  (*Id*. at 101.)

19           On July 7, 2021, the court determined that Ramirez raised one or more colorable

20   claims of ineffective assistance of counsel and granted him an evidentiary hearing on those

21   claims.  (Doc. 10-2 at 116, 118.)  The court ruled that the prosecution did not elicit false

22   testimony at Ramirez's tractor trial because the witness it questioned answered truthfully

23   when he testified that he did not receive any benefit in exchange for his testimony.  (*Id*. at

24   117.)  At the time the witness testified, the witness had already been sentenced on the

25   charges that were referenced in his plea agreement, and the court ruled that he was under

26   no obligation to testify.  (*Id*.)  The court also observed that the jury was informed that the

27   witness had been convicted of a crime for his involvement in the case.  (*Id*.)

28           PCR Evidentiary Hearing

- 5 -

1    On August 19, 2021, the PCR court conducted the first segment of its two-part

2    evidentiary hearing on Ramirez's ineffective assistance claims.  (*See* Doc. 10-2 at 122-23.)

3    The court heard testimony from Ramirez's trial attorney, Ramirez's mother, a former boss

4    of Ramirez's trial attorney, and Ramirez.  (*Id*. at 122-23; 125-204.)  On September 2, 2021,

5    the court conducted the second segment of its evidentiary hearing.  (Doc. 10-3 at 3-5.)  It

6    heard testimony from a different former trial attorney of Ramirez, Ramirez, Ramirez's

7    former girlfriend, three of Ramirez's brothers, and a court reporter.  (*Id*. at 7-68.)

8    On October 15, 2021, the court issued its ruling on Ramirez's PCR Petition.  (Doc.

9    10-3 at 85-93.)  In denying the petition, the court ruled that Ramirez failed to demonstrate

10   that he was subject to ineffective assistance of counsel.  (*Id*. at 91-93.)  The court concluded

11   that Ramirez failed to establish that his attorney's courtroom performance was impaired by

12   alcohol; that he suffered prejudice due to his attorney's alleged failure to impeach a witness

13   at trial; and that his attorney hid facts from him, or gave him incorrect legal advice, or

14   otherwise prevented him from taking a plea offer.  (*Id*. at 91-92.)  The court was also

15   unconvinced that Ramirez's attorney used the word "guarantee" when discussing

16   Ramirez's chances of success on the tractor case.  (*Id*. at 92.)

17   Petition for Review

18   On November 9, 2021, Ramirez petitioned the Arizona Court of Appeals to review

19   the denial of his PCR Petition.  (Doc. 10-3 at 95-104.)  In his Petition for Review, Ramirez

20   claimed that his trial attorney promised and guaranteed him that he would win his tractor

21   case and that, thereafter, his drug case would simply "go away."  (*Id*. at 99.)  He also argued

22   that the PCR court abused its discretion by rejecting as hearsay testimony from his family

23   and girlfriend about these promises.  (*Id*. at 99-101.)  Ramirez argued that the court also

24   abused its discretion by crediting the testimony of his attorney and by refusing to take

25   judicial notice of matters in which unrelated defendants raised concerns about the same

26   lawyer.  (*Id*. at 101-03.)

27   On March 9, 2022, the Arizona Court of Appeals denied Ramirez's Petition for

28   Review.  (*Id*. at 119-20.)  In denying the petition, the court observed that multiple hearsay

1   objections were sustained and overruled by the PCR court and that the statements objected

2   to varied widely. *State v. Ramirez*, No. 2 CA-CR 2021-0101-PR, 2022 WL 703665, at *1

3   (Ariz. Ct. App. Mar. 9, 2022). The court ruled that Ramirez's hearsay objections were

4   waived because he neglected to direct the court to specific testimony or rulings by the PCR

5   court to which he objected. *Id*. ¶ 5. The court also concluded that judicial notice extends

6   to indisputable facts "from sources whose accuracy cannot reasonably be questioned," and

7   that claims raised by other defendants in unadjudicated proceedings failed to meet that

8   standard. *Id*. ¶¶ 6-7 at *2. The court declined Ramirez's request to reweigh the evidence,

9   finding that the trial court was the sole arbiter of witness credibility and that its ruling was

10  supported by substantial evidence. *Id*. ¶ 8. On May 20, 2022, the court issued its mandate

11  relinquishing jurisdiction over the matter. (Doc. 10-3 at 122-23.)

12          Federal Habeas Corpus Petition

13          On March 8, 2023, Ramirez filed the federal habeas corpus petition at hand. (Doc.

14  1.) In the petition, Ramirez argues that he suffered various forms of ineffective assistance

15  of counsel and that the PCR court abused its discretion by refusing to accept testimony

16  from his family and girlfriend concerning promises made to him by his attorney. (*Id*. at

17  15-38.) The petition has been fully briefed. (*See* Docs. 1, 10, 13.) This Report and

18  Recommendation follows.

19                                    **LEGAL STANDARD**

20          Federal district courts are instructed to entertain habeas applications on behalf of

21  persons in custody pursuant to state court judgments "only on the ground that he is in

22  custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

23  § 2254(a). A petition for habeas corpus by a person in state custody:

24
25          [S]hall not be granted with respect to any claim that was adjudicated on the
            merits in State court proceedings unless the adjudication of the claim--(1)
            resulted in a decision that was contrary to, or involved an unreasonable
26          application of, clearly established Federal law, as determined by the Supreme
            Court of the United States; or (2) resulted in a decision that was based on an
27          unreasonable determination of the facts in light of the evidence presented in
            the State court proceeding.
28

1    28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

2           A decision involves an unreasonable application of clearly established federal law

3    if it "identifies the correct governing legal principle but unreasonably applies that principle

4    to the facts of the prisoner's case." *Vega v. Ryan*, 757 F.3d 960, 965 (9th Cir. 2014)

5    (cleaned up).  Under the reasonable determination clause, a state court's factual finding is

6    not unreasonable simply because the federal habeas court reaches a different conclusion.

7    *Id.*  Instead, courts are to presume that the state court's factual findings are correct unless

8    the petitioner "rebuts the presumption of correctness by clear and convincing evidence."

9    *Id.*  In any case, "[a] state court's determination that a claim lacks merit precludes federal

10   habeas relief so long as fairminded jurists could disagree on the correctness of the state

11   court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (cleaned up).   In

12   analyzing a § 2254 petition, review is limited to the record that was before the state court

13   that adjudicated the merits of the claim.  *Pinholster*, 563 U.S. at 181.

**DISCUSSION**

15          Ramirez brings the petition at hand raising two claims for relief.  (Doc. 1 at 15-40.)

16   Ramirez argues that he was the victim of ineffective assistance of trial counsel (*id.* at 15-

17   33) and that the trial court abused its discretion by refusing to accept testimony from his

18   family and girlfriend at the PCR evidentiary hearing (*id.* at 33-38).  The Court addresses

19   these arguments in the order in which they are raised in Ramirez's petition.

20   **I.      Ineffective Assistance of Counsel**

21          As it concerns federal habeas claims of ineffective assistance of counsel, relief may

22   be granted only if the last reasoned state-court decision unreasonably applied the general

23   ineffective assistance standard established by *Strickland v. Washington*, 466 U.S. 668

24   (1984).  *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *see also Barker v. Fleming*,

25   423 F.3d 1085, 1091 (9th Cir. 2005) ("When more than one state court has adjudicated a

26   claim, we analyze the last reasoned decision.").   Here, the Arizona Court of Appeals

27   summarily affirmed the PCR court's denial of Ramirez's ineffective assistance claims.  *See*

28   *Ramirez*, 2022 WL 703665, at \*2, ¶ 8 ("The remainder of Ramirez's arguments amount to

1   a request for this court to reweigh the evidence presented at the hearing. . . We will not

2   reweigh the evidence presented and, because the court's ruling is supported by substantial

3   evidence in the record, we must affirm."). As such, the last reasoned state-court decision

4   is the PCR court's order denying Ramirez's ineffective assistance claims. *See Spreitz v.*

5   *Ryan*, 916 F.3d 1262, 1272 (9th Cir. 2019) (analyzing the PCR court's decision where the

6   Arizona Supreme Court summarily affirmed the PCR court's merits determination on the

7   petitioner's *Eddings* claims); *Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014) ("When

8   a state court does not explain the reason for its decision, we "look through" to the last state-

9   court decision that provides a reasoned explanation capable of review.").

10          Since the PCR court's order on Ramirez's request for post-conviction relief is the

11   last reasoned state-court decision on the ineffective assistance issue, the Court must

12   determine whether the order demonstrates that the court unreasonably applied *Strickland*

13   to the facts of Ramirez's case. *See Woods v. Sinclair*, 764 F.3d 1109, 1132 (9th Cir. 2014)

14   ("AEDPA[3] requires that a federal court find the state court's … conclusions are objectively

15   unreasonable before granting habeas relief."). "This is a difficult to meet and highly

16   deferential standard for evaluating state-court rulings, which demands that state-court

17   decisions be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (cleaned up). If

18   the state-court decision identifies the correct governing legal principle in existence at the

19   time, it is the defendant's burden to prove that the decision unreasonably applied that

20   principle to the facts of his case. *Id.* at 181-82. Where ineffective assistance is alleged in

21   a post-AEDPA  federal habeas case, a court's review is "doubly deferential." *Mirzayance*,

22   556 U.S. at 123.

23          **A.     Insufficient Pretrial Investigation Claim Procedurally Barred**

24          As a preliminary matter, the Court notes that Ramirez includes four subheadings

25

26   [3] AEDPA stands for the "Antiterrorism and Effective Death Penalty Act of 1996."
27   *Mirzayance*, 556 US. At 121. "Inspired by principles of comity, finality and federalism,
     AEDPA establishes a highly deferential standard for reviewing state court determinations."
28   *Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004).

1
2
3
4
5

under the ineffective assistance of counsel claim in his habeas petition.  (*See* Doc. 1 at 17, 20, 23, and 27.)   The Court interprets these subheadings as separate permutations of ineffective assistance, only three of which are cognizable.  To the extent that Ramirez argues that his trial attorney was ineffective for failing to conduct a pretrial investigation (*see id.* at 17-19), this claim is unexhausted and barred from review.[4]

6
7
8
9
10
11
12
13
14
15
16
17

To satisfy the exhaustion requirement, habeas petitioners must "fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (cleaned up).  To fairly present a federal claim, "a petitioner must present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief." *Gulbrandson v. Ryan*, 738 F.3d 976, 992 (9th Cir. 2013) (cleaned up).  While "the complete exhaustion rule is not [intended] to trap the unwary *pro se* prisoner," *Slack v. McDaniel*, 529 U.S. 473, 487 (2000) (cleaned up), it "does not mean … that a petitioner who presented any ineffective assistance of counsel claim … can later add unrelated alleged instances of counsel's ineffectiveness to his claim," *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005).

18
19
20
21
22

Ramirez failed to present his insufficient pretrial investigation ineffective assistance claim to the Arizona Court of Appeals, and if he were granted leave to do so now, the court would find that his claim is procedurally barred.  *See Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) (cleaned up) ("A claim is procedurally defaulted if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present

23

24
25
26
27
28

[4] To the extent that Ramirez invites the Court to reject *Strickland's* presumption of reasonableness when analyzing his attorney's performance, the Court declines to do so. "The burden of rebutting this presumption rests squarely on the defendant, and it should go without saying that the absence of evidence cannot overcome it." *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) (cleaned up).  "In fact, even if there is reason to think that counsel's conduct was far from exemplary, a court still may not grant relief if the record does not reveal that counsel took an approach that no competent lawyer would have chosen." *Id*. (cleaned up).  Ramirez fails to meet this standard.

1   his claims in order to meet the exhaustion requirement would now find the claims

2   procedurally barred."); Ariz. R. Crim. P. 32.2(a)(3) (precluding relief based on any ground

3   "waived at trial or on appeal, or in any previous post-conviction proceeding").  As such,

4   the Court finds this claim to be procedurally defaulted and recommends that it be denied.

5         **B.**      ***Strickland* Applied Reasonably to Incompetent Advice Claim**

6          Criminal defendants have a Sixth Amendment right to competent counsel, and that

7   right extends to the plea-bargaining process.  *Lafler v. Cooper*, 566 U.S. 156, 162 (2012).

8   *Strickland's* deficient performance and prejudice test applies to instances where ineffective

9   assistance results in rejection of a plea offer and the defendant's conviction at the ensuing

10   trial. *Id*. at 163. To demonstrate deficient performance, a defendant must show that

11   "counsel's representation fell below an objective standard of reasonableness."  *Lafler*, 566

12   U.S. at 163 (quoting *Strickland*, 466 U.S. at 688).  The performance prong is reviewed

13   considering all of the circumstances.  *Strickland*, 466 U.S. at 688.  To demonstrate

14   prejudice, a defendant must show that "but for the ineffective advice of counsel there is a

15   reasonable probability that the plea offer would have been presented to the court … the

16   court would have accepted its terms, and that the conviction or sentence, or both, under the

17   offer's terms would have been less severe than under the judgment and sentence that in fact

18   were imposed." *Lafler*, 566 U.S. at 164.

19          Ramirez argues that his attorney provided ineffective assistance because he

20   repeatedly promised and guaranteed that Ramirez would win his tractor case at trial and

21   that, thereafter, his drug case would go away.  (Doc. 1 at 20.)  Ramirez contends that by

22   making these assurances his attorney discouraged him from accepting a favorable plea

23   offer.  (*Id*.)  Ramirez adds that his attorney's promises were often witnessed by members

24   of his family and his girlfriend.  (*Id*.)  He also states that the statements were reported in

25   affidavits attached to his petition for postconviction relief.  (*Id*.)

26          The PCR court addressed these arguments during its evidentiary hearing and in its

27   order denying Ramirez's petition for postconviction relief.  (*See* Docs. 10-2 at 125-203;

28   10-3 at 7-68, 85-93.)  At the hearing, Ramirez's attorney testified that Ramirez was not

1    interested in taking any plea offer that entailed prison time.  (Doc. 10-2 at 134.)  He also

2    testified that he thought that the tractor case "was much more contestable" than the drug

3    case, but that he never promised Ramirez an acquittal on either case.  (*Id.* at 135, 137.)

4    Ramirez's trial attorney denied telling Ramirez that depending on the results of the tractor

5    case, the drug case would go away.  (*Id.* at 137.)

6           There is nothing in the record nor the court's order that demonstrates that the PCR

7    court unreasonably applied *Strickland* to Ramirez's wrongful advice ineffective assistance

8    claim.  In its order, the court summarized the admissible evidence presented at the hearing

9    and identified *Strickland* as the relevant rule-making authority for analyzing ineffective

10   assistance claims.  (Doc. 10-3 at 88-90.)  The court then determined that Ramirez was

11   entitled to competent counsel during the plea-bargaining process and offered an analogous

12   Supreme Court case that addressed ineffective assistance claims in the plea-bargaining

13   process.  (*Id.* at 90.)  Only after hearing testimony from Ramirez, Ramirez's mother, three

14   of Ramirez's brothers, Ramirez's former girlfriend, two of Ramirez's former attorneys, a

15   former boss of Ramirez's trial attorney, and a court reporter, did the court determine that

16   Ramirez's attorney did not use the word "guarantee" when discussing with Ramirez's his

17   chances of success at trial.  (*Id.* at 92.)

18          The court gave no weight to the testimony from Ramirez and his family members

19   that Ramirez took plea offers in all of his prior criminal cases.  (*Id.*)  According to the court,

20   the testimony failed to demonstrate that Ramirez was willing to take a plea offer that

21   included mandatory prison time, and it also failed to show that his attorney's alleged bad

22   advice was the sole reason that Ramirez rejected the prosecution's plea offer.  (*Id.*)  The

23   court recalled that both of Ramirez's former trial attorneys testified that Ramirez had a

24   good defense in the tractor case and that Ramirez testified that he went to trial based on the

25   advice of both men.  (*Id.*)  The court distinguished Ramirez's case from the incorrect legal

26   advice that was given to the defendant in *Lafler v. Cooper*, 566 U.S. 156, 161-62 (2012),

27   and concluded that Ramirez was only given his attorney's opinion, which he was free to

28   accept or deny.  (*Id.* at 92-93.)  Accordingly, the PCR court did not unreasonably apply

1   *Strickland* to Ramirez's wrongful advice ineffective assistance of counsel claim, and the

2   Court recommends that this claim be denied.

3           **C.**     ***Strickland* Applied Reasonably to Failure to Impeach Claim**

4         Ramirez next argues that his attorney provided ineffective assistance because he

5   failed to impeach a witness in Ramirez's tractor case with evidence that the witness was

6   testifying in exchange for a favorable plea agreement. (Doc. 1 at 23-27.) That witness was

7   Matthew Mullins. (*Id.*) To demonstrate ineffective assistance for the failure to impeach

8   or cross examine a witness, "the defendant must overcome the presumption that, under the

9   circumstances, the challenged action might be considered sound trial strategy." *Matylinsky*

10   *v. Budge*, 577 F.3d 1083, 1091 (9th Cir. 2009) (cleaned up). To do so, he must "identify

11   the acts or omissions of counsel that are alleged not to have been the result of reasonable

12   professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 690). "The court must then

13   consider whether those acts or omissions deviated from prevailing professional norms."

14   *Id.* at 1092 (cleaned up). "Even then, counsel is strongly presumed to have rendered

15   adequate assistance and made all significant decisions in the exercise of reasonable

16   professional judgment." *Id.* (cleaned up).

17         Ramirez fails to meet the heavy burden of demonstrating ineffective assistance with

18   this claim. At the PCR hearing, Ramirez's attorney testified, at length, about his decision

19   not to impeach or cross-examine Mullins about his plea agreement at trial. (*See* Doc. 10-

20   2 at 137-140.) The attorney testified that he was aware that Mullins was obligated to testify

21   at trial because of a plea agreement, that he intended to address the agreement during trial,

22   and that he chose not to impeach Mullins with the agreement because he believed Mullins

23   testified truthfully and that Mullins' testimony did not directly implicate Ramirez in the

24   crime. (*Id.*) Notably, Ramirez's PCR counsel failed to challenge these assertions during

25   her cross-examination of the attorney at the evidentiary hearing. (*See id.* at 141-149.)

26         The PCR court reasonably addressed this ineffective assistance claim in its order

27   denying Ramirez's request for postconviction relief. (*See* Doc. 10-3 at 91-92.) The court

28   replicated the relevant part of Mullins' plea agreement in the order, noted that Mullins

1    testified truthfully about the agreement—including the fact that he was sentenced to

2    probation and that his sentencing was months prior to testifying, determined that the

3    attorney's failure to impeach Mullins with the agreement was a matter of trial strategy, and

4    concluded that matters of trial strategy could not form the basis of an ineffective assistance

5    claim and that Ramirez failed to demonstrate that he suffered prejudice from his attorney's

6    failure to revisit facts that were already raised on direct examination.  (*Id.*)  While this

7    Court may disagree whether matters of trial strategy may serve as a basis for ineffective

8    assistance claims, it concludes that as an initial matter, Ramirez failed to demonstrate that

9    his attorney performed deficiently by declining to impeach Mullins at trial.  This is due to

10   the fact that Ramirez failed to offer evidence at his evidentiary hearing demonstrating that

11   the attorney's decision was unreasonable or ineffective.  Ramirez also failed to demonstrate

12   prejudice, i.e., "a reasonable probability that, but for counsel's unprofessional errors, the

13   result of [his trial] would have been different."  *Strickland*, 466 U.S. at 694.  Accordingly,

14   the PCR court did not unreasonably apply *Strickland* to Ramirez's failure to impeach

15   ineffective assistance claim, and the Court recommends that this claim be denied.

16         **D.     *Strickland* Applied Reasonably to Substance Abuse Claim**

17         Ramirez's final ineffective assistance claim concerns his allegation that his trial

18   attorney's "alcohol problems impacted his ability to competently represent [Ramirez]

19   during the course of this case."  (Doc. 1 at 28.)  To succeed on an ineffective assistance

20   claim premised on an attorney's use of alcohol or drugs, "a petitioner must demonstrate

21   that the attorney's performance was deficient and that the deficiency prejudiced the

22   petitioner."  *Bonin v. Vasquez*, 807 F. Supp. 589, 602 (C.D. Cal. 1992), *aff'd sub nom.*

23   *Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995).

24         Here, instead of arguing that the PCR court unreasonably applied *Strickland* to his

25   ineffective assistance claim, or that the PCR court made an unreasonable determination

26   concerning the claim, Ramirez argues that all of the aforementioned instances of ineffective

27   assistance are causally connected to his attorney's alleged abuse of alcohol.  (Doc. 1 at 29-

28   33.)  This Court is prohibited from making *de novo* determinations on habeas review unless

1   certain preconditions are satisfied.  *See Lambert v. Blodgett*, 393 F.3d 943, 971-72 (9th Cir.

2   2004) (cleaned up) ("[U]nder AEDPA, factual determinations by state courts are presumed

3   correct absent clear and convincing evidence to the contrary[;] and a decision adjudicated

4   on the merits in a state court and based on a factual determination will not be overturned

5   on factual grounds unless objectively unreasonable in light of the evidence presented in the

6   state-court proceeding").  Ramirez fails to satisfy either of these conditions.

7          At the PCR hearing, Ramirez testified that he smelled alcohol on his attorney's

8   breath at the defense table in the morning and afternoons at the tractor trial and some

9   alcohol but less during his drug trial.  (Doc. 10-2 at 188-89.)  Ramirez also, however,

10   testified that he did not observe any indication that his attorney was under the influence

11   and he did not inform the trial judge about the smell of alcohol on his attorney's breath.

12   (*Id*. at 189, 192.)  Ramirez's girlfriend testified that she witnessed the attorney drink from

13   a "shooter bottle" during a recess from Ramirez's tractor trial, which she explained was a

14   three-to-four-inch liquor bottle sold at convenience stores.  (Doc. 10-3 at 33, 40.)  In

15   contrast to this testimony, Ramirez's attorney testified that he was not intoxicated during

16   Ramirez's trials nor had he drank alcohol before the trial started or during lunch.  (Doc.

17   10-2 at 140.)  A veteran court reporter, who worked both of Ramirez's trials, also testified

18   that in his over twenty-five years of service, he had seen attorneys in the courtroom who

19   were under the influence of alcohol, but that he did not observe Ramirez's attorney to be

20   under the influence during Ramirez's trials.  (Doc. 10-3 at 90.)

21          In the PCR court's order denying Ramirez's request for postconviction relief on this

22   claim, the court credited the testimony of Ramirez's girlfriend that she saw the attorney

23   drinking from a suspicious bottle, but it concluded that the testimony failed to establish

24   that the attorney's courtroom performance was impaired by alcohol.  (*Id*. at 91.)  The court

25   also found that no one testified that the attorney appeared to be under the influence during

26   trial and that the court reporter did not notice any impairment and apparently neither did

27   the trial judge.  (*Id*.)  The court recalled that Ramirez's girlfriend said that the attorney

28   looked tired and unkept, but it concluded that a sloppy appearance did not equal ineffective

1   assistance of counsel.  (*Id*.)

2        Ramirez fails to demonstrate that the PCR court unreasonably applied *Strickland* to

3   his substance abuse ineffective assistance claim.  Additionally, the Court rejects Ramirez's

4   argument that his attorney's subsequent discipline and disbarment, on issues unrelated to

5   his representation of Ramirez at trial, contributed to his alleged ineffective assistance.  (*See*

6   Doc. 1 at 38-40.); *United States v. Mouzin*, 785 F.2d 682, 698 (9th Cir. 1986) ("Neither

7   suspension nor disbarment invites a per se rule that continued representation in an ongoing

8   trial is constitutionally ineffective.").  Accordingly, the Court recommends that Ramirez's

9   final ineffective assistance claim be denied.

10   **II.      PCR Court's Evidentiary Rulings Unreviewable**

11        In addition to arguing that his trial attorney provided ineffective assistance, Ramirez

12   contends that several of the PCR court's evidentiary rulings also provide a basis for habeas

13   relief.  (Doc. 1 at 33-38.)  Specifically, Ramirez argues that the PCR court "abused its

14   discretion" when it: (i) determined that testimony from his family and friends about his

15   attorney's alleged promises of trial success were inadmissible hearsay; (ii) credited the

16   testimony of Ramirez's attorney that he did not promise or guarantee that Ramirez would

17   win at trial; (iii) refused to take judicial notice of two other matters in which other unrelated

18   defendants raised similar claims with the same attorney; and (iv) failed to consider the

19   evidence that was presented at the hearing in his favor.  (*Id*.)  The Arizona Attorney General

20   argues that these arguments are not cognizable on habeas review.  (Doc. 10 at 11-12.)  The

21   Court agrees.

22        "In conducting habeas review, a federal court is limited to deciding whether a

23   conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v.*

24   *McGuire*, 502 U.S. 62, 68 (1991).  As such, the Supreme Court has reiterated that "federal

25   habeas corpus relief does not lie for errors of state law," *id.* at 67, and the United States

26   Court of Appeals for the Ninth Circuit has similarly instructed that "a petition alleging

27   errors in the state post-conviction review process is not addressable through habeas corpus

28   proceedings," *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989).  On habeas corpus

1   review, federal courts lack jurisdiction to review state court applications of state procedural

2   rules. *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1998).

3          Ramirez argues that faulty rulings during his evidentiary hearing lead the PCR court

4   to make the erroneous determination that his trial attorney did not make promises of

5   success at trial.  (Doc. 1 at 38.)  Ramirez then walks back this claim in his reply, conceding

6   that his arguments "are not central to the [p]etition, nor were they included to serve as

7   challenges to the PCR [c]ourt's handling of [the] Rule 33 proceedings."  (Doc. 13 at 2.)

8   Ramirez goes on to state that the arguments merely provide a "procedural history of [his]

9   claims and demonstrate that he exhausted [the] claims by fairly presenting them to the State

10   courts."  (*Id*.)  Ramirez then proclaims that his petition "concerns the denial of [his] Sixth

11   Amendment right to the effective assistance of counsel at trial," and that "[i]rrespective of

12   whether the Court addresses the rulings of the PCR [c]ourt, it may address the underlying

13   IAC claim, which is a direct attack on the constitutionality of the detention."  (*Id*. at 5.)

14          Notwithstanding the fact that federal courts do not review state-court determinations

15   for an "abuse of discretion," it is clear from the record that the PCR court made its

16   evidentiary rulings pursuant to Arizona law, which precludes this Court's review.  (*See*

17   Doc. 10-3 at 90 (ruling that the Arizona Rules of Evidence apply to hearsay objections at

18   Rule 32 evidentiary hearings).); *Ramirez*, 2022 WL 703665, at *2, ¶ 7 (ruling that Arizona

19   Rule of Evidence 201 applies to PCR evidentiary hearings and that Ramirez's request to

20   take judicial notice of other matters did not meet the standard outlined in the Rule).

21   Accordingly, the Court determines that Ramirez's abuse of discretion arguments, which

22   allege evidentiary errors by the state PCR court, are incognizable on habeas review; and it

23   recommends that the claims be dismissed and Ramirez's petition denied.

24        ////

25        ////

26        ////

27        ////

28        ////

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RECOMMENDATION**

For the aforementioned reasons, the Magistrate Judge recommends that the District Court enter an order DENYING Ramirez's Petition for Writ of Habeas Corpus by a Person in State Custody Under 28 U.S.C. § 2254 (Doc. 1) and DISMISSING this case.

Pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy.  No replies shall be filed unless leave is granted by the District Judge.  If objections are filed, the parties should use the following case number: **23-cv-114-JGZ**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 20th day of November, 2023.

Honorable Bruce G. Macdonald
United States Magistrate Judge